Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 8, 2003      Decided October 31, 2003

Nos. 02-1337 & 02-1347

CONSUMER FEDERATION OF AMERICA, ET AL.,
PETITIONERS/APPELLANTS

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS/APPELLEES

AT&T CORPORATION, ET AL.,
INTERVENORS

On Petition for Review and Notice of Appeal of Orders of the
Federal Communications Commission

*Cheryl A. Leanza* argued the cause for petitioners/appellants. With her on the briefs were *Harold Feld* and *Andrew Jay Schwartzman.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Joel Marcus*, Counsel, Federal Communications Commission, argued the cause for respondents/appellees. With him on the brief were *R. Hewitt Pate*, Acting Assistant Attorney General, *Robert B. Nicholson* and *Steven J. Mintz*, Attorneys, *John Rogovin*, Acting General Counsel, and *Daniel M. Armstrong*, Associate General Counsel.

*Arthur J. Burke* argued the cause for intervenors Comcast Corporation, et al. With him on the brief were *Dennis E. Glazer* and *David L. Lawson*. *Mark C. Rosenblum* entered an appearance.

Before: EDWARDS, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: This dispute arose during the Federal Communications Commission's review of a proposed merger between AT&T Broadband Corp. ("AT&T") and Comcast Corp. The Commission rejected a request from several consumer groups to place in the record an agreement between AT&T and Time Warner, Inc.[1] The agreement established the terms by which Time Warner's AOL subsidiary would provide internet service to customers of the merged firm. The consumer groups – the Consumer Federation of America, Consumers Union, and the Center for Digital Democracy – immediately petitioned for judicial review of this decision. They later filed an appeal in this court from the Commission's Order approving the license transfers required to consummate the merger.

## I.

At the time they decided to merge, AT&T was the nation's largest cable company, while Comcast was its third largest. AT&T also owned an interest in Time Warner Entertainment, L.P. ("TWE"), a limited partnership with Time Warner and the nation's second-largest cable provider. The Commission may not have approved the merger if the new firm – AT&T Comcast Corp. – maintained its interest in all three cable

---

[1] Time Warner, Inc., was then known as AOL Time Warner, Inc.

systems. So the merging parties proposed that, pending an eventual divestiture, AT&T would insulate its TWE interest by placing it in an irrevocable trust. The parties executed an agreement with Time Warner to implement this arrangement (the "Restructuring Agreement").

In connection with the Restructuring Agreement, the parties also negotiated the agreement at the center of this case – the AOL ISP Agreement. The AOL ISP Agreement is not in the record, but the parties agree that it establishes the terms by which customers of AT&T Comcast would be able to choose AOL as their internet service provider ("ISP"). The parties also agree that the AOL ISP Agreement contains two additional features. First, the agreement is non-exclusive – that is, AT&T Comcast could negotiate similar agreements with other ISPs, giving its customers a choice of providers. Second, the agreement prohibited AOL from providing streaming video to AT&T Comcast's customers.

At the request of the Commission staff, the merging parties filed the Restructuring Agreement with the Commission. Initially they withheld its exhibits, the AOL ISP Agreement among them. The merging parties were reluctant to file the exhibits wholesale because of their commercially sensitive nature, and because they did not think the exhibits were relevant. They asked the Commission staff to review the exhibits at the Department of Justice, where they had submitted them in connection with the Department's merger review process. If the staff identified any particular exhibit as relevant to the merger, the merging parties would then file it with the Commission. The staff agreed to this proposal, reviewed the documents and determined that the AOL ISP Agreement was not relevant to the Commission's inquiry.

Meanwhile, the consumer groups learned of the AOL ISP Agreement through press reports. They filed a motion asking the Commission to force AT&T and Comcast to file the AOL ISP Agreement and make it part of the administrative record. The Commission denied the motion, *In re Applications for Consent to the Transfer of Control of Licenses from Comcast Corp. and AT&T Corp. to AT&T Comcast Corp.*, 17

F.C.C.R. 22,633 (2002) ("the Motion Order"), and the groups petitioned this court for review pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1). The following month, the Commission approved the license transfers required to consummate the merger. *In re Applications for Consent to the Transfer of Control of Licenses from Comcast Corp. and AT&T Corp. to AT&T Comcast Corp.*, 17 F.C.C.R. 23,246 (2002) ("the Merger Order"). The consumer groups appealed that decision pursuant to 47 U.S.C. § 402(b)(6). We consolidated the petition and the appeal.

## II.

There are two preliminary matters. The first deals with the petition for judicial review. The Motion Order was not a "final" order within the meaning of the Hobbs Act, 28 U.S.C. § 2342(1). It did not finally decide whether the Commission would approve transfer of the licenses and it did not end the proceedings before the Commission. *See Illinois Citizens Comm. for Broad. v. FCC*, 515 F.2d 397, 402 (D.C. Cir. 1975). While we therefore lack jurisdiction over the petition for review, and will dismiss it, this is of little consequence.[2] The Merger Order is appealable under 47 U.S.C. § 402(b)(6), and the Administrative Procedure Act, 5 U.S.C. § 704, provides that an agency "ruling not directly reviewable" – such as the Motion Order – may be reviewed with the final agency action.

The second matter deals with standing. The intervenors – AT&T, Comcast and Comcast Holdings Corp. – argue that the consumer groups lack standing. An association has standing to pursue litigation "on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires members' participation in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S.

---

[2] The only practical consequence of the dismissal is that the United States is no longer a party to this case. *Compare* 28 U.S.C. § 2344 (providing that Hobbs Act action "shall be against the United States").

333, 343 (1977). Here no one questions that the consumer groups meet the last two *Hunt* conditions. The dispute is about the first condition – whether any member can establish individual standing, which requires a showing that the member has suffered (1) injury-in-fact (2) traceable to the Merger Order (3) that could be redressed by vacating and remanding the Merger Order. *See Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 46 (D.C. Cir. 1994). It is enough if just one member of the groups has standing. *City of Waukesha v. EPA*, 320 F.3d 228, 235-37 (D.C. Cir. 2003) (per curiam); *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000).

To establish standing, the Consumer Federation of America submitted a short affidavit from its research director (and member), Mark Cooper.[3] Cooper asserts that he subscribed to Comcast's cable service both before and after the merger.[4] He identifies two injuries he suffered as a result of the Commission's decision to approve the merger. The first is that his cable rates have risen since then. While this is certainly an injury-in-fact, the consumer groups make no attempt to show how this injury can be traced to the merger or – much the same thing – how it could be redressed by undoing the merger. *See Tel. & Data Sys.*, 19 F.3d at 46.

Cooper's affidavit also states that although he would like to subscribe to Comcast's high-speed internet service, he is deterred by his inability to choose his ISP and by the fact that Comcast could restrict his access to content. At oral argument, the intervenors maintained that this is not an actual injury because Cooper could obtain high-speed internet access using technologies other than cable. But the inability of consumers to buy a desired product may constitute injury-in-fact "even if they could ameliorate the injury by purchasing

---

[3] The Consumer Federation also claims that its Motion to Provide Information, which was supported by a verifying affidavit, contains sufficient facts to establish standing. We think not. The Motion does not mention any actual injuries suffered by particular Consumer Federation members.

[4] AT&T Comcast Corp., the entity created by the AT&T-Comcast merger, has since been renamed Comcast Corp.

some alternative product." *Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1247 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 340 (1984). We therefore believe Cooper satisfies the first part of the standing inquiry.

This injury to Cooper may also be fairly traced to the Commission's order. When an agency order permits a third-party to engage in conduct that allegedly injures a person, the person has satisfied the causation aspect of the standing analysis. *America's Cmty. Bankers v. FDIC*, 200 F.3d 822, 827-28 (D.C. Cir. 2000); *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 440-43 (D.C. Cir. 1998) (en banc). The Consumer Federation had requested the Commission to condition the merger on a commitment from AT&T Comcast to allow unaffiliated ISPs access to its cable system and to refrain from interfering with content. In rejecting these demands, the Commission's order permitted the practices to exist. This is enough to attribute Comcast's conduct to the Commission for standing purposes. It follows that the injury is also redressable. On remand, the Commission could adopt the Consumer Federation's position and force Comcast to change its practices. Although remand would not entitle Cooper to such relief, it "would constitute a 'necessary first step.'" *Tel. & Data Sys.*, 19 F.3d at 47 (quoting *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 270, 273 (D.C. Cir. 1988)). Since Cooper therefore has standing to challenge the Merger Order, so does the Consumer Federation.

## III.

As to the merits, the consumer groups argue that the Commission could not have properly completed its public interest review without first examining the AOL ISP Agreement. Their theory focuses on the allegation that several terms in the Agreement are unfavorable to AOL – particularly the restriction on streaming video. According to the groups, the fact that AOL agreed to these terms demonstrates that AT&T Comcast would have substantial market power in the residential broadband market and that it is likely to use that power to interfere with users' access to

content. Therefore, the Commission should not have approved the license transfers without taking this danger into account, and it could not fully evaluate the danger without examining the AOL ISP Agreement.

As the Commission points out, both the access of unaffiliated ISPs to cable systems and the power of cable companies to restrict content are industry-wide problems not specific to this merger. The Commission has initiated a rulemaking proceeding to deal with these issues on an industry-wide basis. *See In re Inquiry Concerning High-Speed Access to the Internet over Cable and Other Facilities*, 17 F.C.C.R. 4798 (2002). The Commission's decision not to address them in this particular case is consistent with its broad discretion to choose between rulemaking and adjudication. *See Chisholm v. FCC*, 538 F.2d 349, 365 (D.C. Cir. 1976). In *SBC Communications, Inc. v. FCC*, 56 F.3d 1484, 1491 (D.C. Cir. 1995), we approved as "entirely reasonable" a similar Commission decision to address industry-wide issues in a separate proceeding, rather than during the review of an individual merger.

The consumer groups counter that the Commission acted inconsistently with its decision in the AT&T-MediaOne merger. *See In re Applications for Consent to the Transfer of Control of Licenses and Section 214 Authorizations from MediaOne, Inc., to AT&T Corp.*, 15 F.C.C.R. 9816 (2000). Although the Commission there indicated it would have disapproved the merger if AT&T had not agreed to negotiate access agreements with unaffiliated ISPs, *see id.* at 9866-67, *MediaOne* is distinguishable from this case, for reasons the Commission stated. At the time of the MediaOne merger, ISPs wholly or partially controlled by AT&T and MediaOne had exclusive relationships with several of the nation's largest cable systems. *Id.* at 9826-27. Thus, that merger may have threatened the viability of other, unaffiliated ISPs. Here, the merging parties have negotiated nonexclusive agreements with numerous independent ISPs, including AOL. Merger Order, 17 F.C.C.R. at 23,296-97.

Of course, the consumer groups have the right to try to persuade the Commission to change its policy and condition

the merger on open access for unaffiliated ISPs. If they needed the AOL ISP Agreement to make that argument, perhaps the Commission would have erred in excluding it. But the groups' Petition to Deny fully explicated the case for open access without ever referring to the AOL ISP Agreement, let alone indicating that its exclusion hampered their ability to make their case. In fact, at oral argument, the groups could not point to one argument that the Commission's decision to exclude the Agreement prevented them from making. Similarly, the Commission rejected the groups' arguments without regard to the contents of the AOL ISP Agreement. Thus, the decision to exclude the Agreement from the record could not have affected the outcome of the proceeding. It was at worst harmless error. *See E. Carolinas Broad. Co. v. FCC*, 762 F.2d 95, 104 (D.C. Cir. 1985).

The consumer groups also claim that numerous procedural errors infected the Commission's decision to exclude the Agreement from the record. Since we uphold the Commission's decision to disregard the Agreement, the mere placement of the Agreement in the administrative record could not have changed the outcome of this case.

Because the FCC's action "resulted from consideration of the relevant factors and the agency has not succumbed to a clear error of judgment, its decision must be upheld." *SBC Communications*, 56 F.3d at 1490 (citations and quotation marks omitted). The petition for review is dismissed, and Commission's decision to approve the license transfers is affirmed.

*So ordered.*