Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 20, 2003      Decided April 23, 2004

No. 02-1370

CALIFORNIA METRO MOBILE COMMUNICATIONS, INC.,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

———

Appeal of an Order of the
Federal Communications Commission

———

*Christopher D. Imlay* argued the cause for the appellant.

*Pamela L. Smith*, Counsel, Federal Communications Commission, argued the cause for the appellee. *John A. Rogovin*, General Counsel, and *Daniel M. Armstrong*, Associate General Counsel, Federal Communications Commission were on brief. *Jane E. Mago*, Assistant General Counsel, Federal Communications Commission, entered an appearance.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: California Metro Mobile Communications, Inc. (CMMC) appeals the Federal Communications Commission's (Commission's) order denying review of the decision of its Public Safety and Private Wireless Division to modify CMMC's trunked radio station by removing one frequency. CMMC first contends that the Commission lacks authority under the Communications Act of 1934 (Communications Act or Act), 47 U.S.C. §§ 151 *et seq.*, and the implementing regulations to modify CMMC's license. Second, CMMC maintains that, even if the Commission has authority to modify its license, the decision to do so violates the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). We reject CMMC's claims as explained below and, accordingly, affirm the Commission's order.

## I.

CMMC, a provider of mobile radio equipment and two-way radio service, applied to the Commission for a license to operate a trunked[1] radio station on Very High Frequency (VHF) channels in the Industrial/Business radio pool of the

---

[1] The process of "trunking" increases efficiency in spectrum use by "giving a single transmitting station simultaneous access to multiple channels so that it can systematically scan all lines until it finds an open channel on which to place a waiting call. This pooling enables expeditious handling of many more calls than is possible if each call had to be completed, if at all, only through one preassigned channel." *Telocator Network of Am. v. FCC*, 691 F.2d 525, 530 n.36 (D.C. Cir. 1982). In *Telocator Network* we analogized trunking to customer lines at a bank: "If there is a separate line for each teller, the customer gets on what he thinks is a short line only to find out that the customer in front of him has a lengthy transaction. On the other hand, if there was only one line feeding into all the tellers, the line would keep moving because only one teller out of many would be slowed down by the lengthy transaction." *Id.*

Private Land Mobile Radio (PLMR) services in Twin Creeks, California. The Personal Communications Industry Association (PCIA), an organization certified by the FCC to coordinate frequencies, submitted CMMC's application to the Commission's Licensing and Technical Analysis Branch (Branch) of the Public Safety and Private Wireless Division (Division) of the Wireless Telecommunications Bureau and recommended appropriate frequencies for operation of CMMC's proposed station. On September 8, 1999 the Branch granted CMMC a license to operate a trunked radio station under the call sign WPOY920 on five channels, including frequency 153.6125 MHz.

On September 19, 2000 Pacific Gas & Electric (PG&E) petitioned[2] the Commission to revoke CMMC's license because, it claimed, CMMC's operation on frequency 153.6125 MHz potentially interfered with the operations of its earlier-licensed stations (KJX775, WNFM314 and WPPX407) on frequency 153.6050 MHz. PG&E submitted an interference study done by the Industrial Telecommunications Association (ITA) which demonstrated that CMMC's interference signal contour overlapped PG&E's service area signal contours. As the stations' signals overlapped, PG&E contended that the Commission improperly granted CMMC's application because PG&E had a prior and exclusive right to operate on frequency 153.6050 MHz and CMMC had failed to comply with Commission rules by obtaining PG&E's consent to operate on frequency 153.6125 MHz. In this regard, PG&E asserted that, given the "critical nature of [its] operation," "in no way" would it have consented to CMMC's operation on frequency 153.6125 MHz. Joint Appendix (JA) 1.

Responding to PG&E's petition, the Branch sent a letter to the PCIA on February 15, 2001 asking it to demonstrate that

---

[2] PG&E's letter, which it styled a "Petition for Revocation," was filed under section 1.91 of the Commission rules, which, *inter alia*, provides that, if it appears that a license should be revoked, "the Commission will issue an order directing the person to show cause why an order of revocation ... should not be issued." 47 C.F.R. § 1.91(a).

the frequency coordination it performed for CMMC's application complied with Commission rules and, if it in fact failed to do so, to submit a proposal to remedy the defect. On March 12, 2001 the PCIA responded, stating that the frequency coordination it did for CMMC's application had in fact failed to take into account licenses held by PG&E and proposing that the Commission "correct" CMMC's license "by removing frequency 153.6125." JA 9.

On August 14, 2001 the Division denied PG&E's petition but, on its own motion, initiated a proceeding to modify CMMC's license by deleting frequency 153.6125 MHz. *Pacific Gas & Elec. Co., Petition to Revoke Grant of License for California Metro Mobile Communications for Industrial/Business Private Land Mobile Radio Station, WPOY920, Twin Creeks, California & California Metro Mobile Communications, Licensee of Trunked Industrial/Business Pool Station WPOY920, Twin Creeks, California*, Memorandum Opinion & Order, 16 FCC Rcd 15419 (released Aug. 17, 2001). The Division first addressed CMMC's contention that the Commission lacked authority to entertain PG&E's petition because it was in effect an untimely petition for reconsideration under section 405 of the Communications Act, 47 U.S.C. § 405.[3] The Commission rejected CMMC's contention, explaining that PG&E's request "is most properly characterized as an informal request for Commission action under [s]ection 1.41 of the Commission's [r]ules."[4] 16 FCC Rcd at 15421.

---

[3] Section 405 provides in part: "After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action." 47 U.S.C. § 405(a). The petition must "be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of." *Id.*

[4] Section 1.41 provides: "Except where formal procedures are required under the provisions of this chapter, requests for action may be submitted informally." 47 C.F.R. § 1.41.

Turning to the merits of the request, the Division agreed with PG&E that CMMC's application was improperly coordinated because it failed to provide PG&E's operations with the required level of interference protection. *Id.* The Division explained, however, that revocation of CMMC's license was unnecessary under the circumstances because PCIA had "proposed changes to the CMMC license designed to eliminate interference to PG&E's stations." *Id.* at 15422. The Division concluded instead that section 316 of the Communications Act,[5] 47 U.S.C. § 316, which authorizes the Commission to modify a license in the public interest, convenience and necessity, provided the "appropriate vehicle for resolving this matter." *Id.* And the Division found that section 316's requirements were met: "[T]he proposed modification would serve the public interest by preserving the existing coverage areas of affected parties and preventing harmful interference, while not unduly disrupting CMMC's operations." *Id.* Thus, the Division proposed to modify CMMC's license by deleting frequency 153.6125 MHz following notice to CMMC and an opportunity for CMMC to protest it. *Id.*; *see* 47 U.S.C. § 316(a)(1) (modification order not final until licensee notified of proposed action and given at least thirty days to protest); 47 C.F.R. § 1.87(a) (same). CMMC availed itself of this opportunity.

On December 27, 2001 the Division denied CMMC's petition for reconsideration and modified CMMC's license by deleting frequency 153.6125 MHz. *California Metro Mobile Communications, Inc., Modification of Industrial/Business Pool Trunked Station WPOY920 Frequency 153.1625 MHz,* Memorandum Opinion & Order & Order of Modification, 17 FCC Rcd 112 (released Dec. 31, 2001). In its petition CMMC had again challenged the Commission's authority to modify its

_____

[5] Section 316 provides in part: "Any station license . . . may be modified by the Commission either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this chapter or of any treaty ratified by the United States will be more fully complied with." 47 U.S.C. § 316(a)(1).

license. CMMC claimed that PG&E's request constituted an untimely petition for reconsideration under 47 C.F.R. § 1.106[6] and that, because PG&E failed to file its petition within section 405's 30–day window, the Commission could not consider PG&E's request as an informal petition under 47 C.F.R. § 1.41. CMMC also claimed that 47 C.F.R. § 1.113,[7] which allows an action taken under delegated authority to be modified or set aside within 30 days of its public notice, prevented the Division from modifying a license once the 30 days expired.

Finding CMMC's procedural arguments to be "without merit," the Division rejected them. 17 FCC Rcd at 113–14. The Division first reasserted that, in proposing to modify CMMC's license, it did not purport to act under the authority of 47 C.F.R. § 1.113 but instead pursuant to section 316 of the Act and 47 C.F.R. § 1.87(a). *Id.* at 114. The Division further explained that, while CMMC correctly noted that section 405 of the Act requires petitions for reconsideration to be filed within 30 days following public notice of the action the Commission is asked to reconsider, the Division proposed to modify CMMC's license on its own motion. *Id.* Turning to the proposed modification itself, the Division explained that CMMC had waived its right to protest the modification by failing to object to it on the merits within the prescribed 30–day period. *Id.* Finding that the modification served the public interest, the Division deleted frequency 153.6125 MHz from CMMC's license. *Id.* CMMC then filed an application for review with the Commission.

On October 29, 2002 the Commission denied CMMC's application for review. *License of California Metro Mobile Communications, Inc., Modification of Industrial/Business*

---

[6] Section 1.106 requires that a petition for reconsideration "be filed within 30 days from the date of public notice of the final Commission action." 47 C.F.R. § 1.106(f).

[7] Section 1.113 provides that "[w]ithin 30 days after public notice has been given of any action taken pursuant to delegated authority, the person, panel, or board taking the action may modify or set it aside on its own motion." 47 C.F.R. § 1.113(a).

*Pool Trunked Station WPOY920; Frequency 153.6125*, Memorandum Opinion & Order, 17 FCC Rcd 22974 (released Nov. 13, 2002) [hereinafter *California Metro Mobile Order*]. The Commission rejected CMMC's contention that section 316 did not authorize the license modification, concluding that section 316 authorizes it to modify a license if, in its judgment, the modification will serve the public interest, convenience and necessity with "no limitation on the time frame within which the Commission may act to modify a license." *Id.* at 22975. The Commission went on to explain that "[a]lthough [s]ection 405 of the Act explicitly requires that petitions for reconsideration be filed within thirty days after public notice of the action is given, Commission action under section 316 of the Act is not subject to the limitations on revocation, modification or reconsideration imposed by [s]ection 405 of the Act and implemented by" Commission rules. *Id.* (footnote omitted). Indeed, according to the Commission, CMMC's reading of section 316 "would vitiate the Commission's authority under [s]ection 316." *Id.* at 22976.

The Commission also distinguished an earlier FCC order CMMC relied on. *Id.* The Commission explained that its *San Mateo*[8] decision differed because it dealt with the Branch's authority to correct clerical errors after the period for *sua sponte* action had run. *Id.* By contrast, the Commission explained, "[n]othing" in that decision touched on the subject of CMMC's case: the Commission's ability to modify a license post-grant under section 316. *Id.* The Commission further stated that, "[a]lthough the Division relied on a faulty coordination in granting the frequency at issue to CMMC, it

---

[8] *Applications of County of San Mateo, California, To Modify Public Safety Land Mobile Radio Station WIG278*, Memorandum Opinion & Order, 16 FCC Rcd 16501 (released Sept. 11, 2001) [hereinafter *San Mateo II*]; *see also County of San Mateo, California, Applications to Modify Public Safety Land Mobile Radio Station WIG278*, Order on Review & Reconsideration, 16 FCC Rcd 4291 (released Jan. 8, 2001) [hereinafter *San Mateo I*].

did intend at the time to grant that particular frequency, and, thus, its grant was not a ministerial or clerical error." *Id.*

In addition, the Commission rejected CMMC's claim that the Commission lacked authority to modify its license because the sole basis for the modification was PG&E's petition for revocation. *Id.* The Commission explained that the Division denied PG&E's petition for revocation and acted on its own motion to modify CMMC's license under section 316. *Id.* The Commission further noted that deleting a single frequency from CMMC's trunked station "was not tantamount to a revocation of [its] license." *Id.*

Finally, the Commission addressed CMMC's protest (which the Division deemed waived because it never received the protest). *Id.* at 22976–78. The Commission rejected CMMC's argument that the public interest would not be served by modifying a license based on *potential* interference only, observing that, under its rules, " 'objectionable interference will be considered to exist' when the interference contour of a proposed trunked station would intersect the service contour of an existing station." *Id.* at 22977 (quoting 47 C.F.R. § 90.187(b)(2)(iii)). Thus, the Commission explained, the overlap of the two contours alone "is sufficient to create a violation" of the rule which required CMMC to obtain PG&E's consent. *Id.* The Commission pointed out that, especially with trunked stations, stations with overlapping contours "cannot effectively cooperate in sharing the frequency and minimizing and reducing interference as required" by Commission rules. *Id.* (citing 47 C.F.R. §§ 90.173, 90.403). Accordingly, the Commission concluded that modifying CMMC's license served the public interest by curing an "ongoing violation . . . that can unavoidably and presumptively[ ] only lead to predictable interference difficulties in a shared spectrum environment."[9] *Id.*

---

[9] The Commission also rejected CMMC's complaint that modifying its license would hamper its ability to provide adequate service, calling it a "bare" assertion because CMMC failed to substantiate it. *Id.*; *see* 47 U.S.C. § 309(d)(1) ("allegations of fact shall . . . be supported by affidavit of a person or persons with personal knowl-

CMMC now appeals the Commission's order pursuant to 47 U.S.C. § 402(b)(5) and 28 U.S.C. § 2342(1).

## II.

Our review of the Commission's action is guided by familiar administrative law standards. We defer to the Commission's interpretation of the Communications Act so long as the Congress has not unambiguously forbidden it and it is otherwise permissible. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 218 (2002). Under *Chevron*'s classic formulation, if the Congress "has directly spoken to the precise question at issue," we "give effect to [its] unambiguously expressed intent"; "if the statute is silent or ambiguous," we defer to the Commission's interpretation so long as it is "based on a permissible construction of the statute." 467 U.S. at 842–43. We will affirm the Commission's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A); *see City of Brookings Mun. Tel. Co. v. FCC*, 822 F.2d 1153, 1164 (D.C. Cir. 1987). We do not prefer our judgment to that of the Commission and require only that it "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). The Commission's modification of CMMC's license easily survives the application of these standards of review.

---

edge thereof"); 47 C.F.R. § 1.87(d) (protest must comply with requirements of section 309). CMMC's unsupported allegation, the Commission noted, failed to "raise a substantial and material question of fact concerning the modification of CMMC's license." 17 FCC Rcd at 22978. Further, because CMMC is licensed to operate on other frequencies, the modification of its license, according to the Commission, "may have a minor effect on CMMC's operations." *Id.*

CMMC initially claims, as it did below, that neither section 405 nor section 316 authorized the Commission to modify its license. We need not be detained long by CMMC's argument that PG&E's petition for revocation was an untimely petition for reconsideration under section 405 of the Act (and sections 1.106 and 1.113 of the rules). PG&E's petition was filed approximately one year after the time for filing a petition for reconsideration had expired and therefore it could not be treated as a petition for reconsideration. *See* 47 U.S.C. § 405(a); 47 C.F.R. § 1.106(f). We see nothing impermissible, however, in the Commission's treating it as an informal request for action. *See* 47 C.F.R. § 1.41(a); *see JPJ Elec. Communications, Inc.*, *For Reconsideration of Dismissal of Informal Request to Modify Station KNNQ312, Licensed to the Town of Clay, New York*, Order on Reconsideration, 16 FCC Rcd 2902, 2904 (Div. 2001) (addressing petition for modification filed outside time for petition for reconsideration under section 1.41). Moreover, the Commission could not have been clearer that, in modifying CMMC's license, it acted on its own motion and pursuant to section 316 of the Act and section 1.87(a) of its rules. *See California Metro Mobile Order*, 17 FCC Rcd at 22975.

CMMC argues, however, that the Commission's decision in *San Mateo I*, 16 FCC Rcd at 4291–94, prevented the Commission from proceeding as it did. It contends that *San Mateo I* holds that a license issued pursuant to delegated authority may not be modified for any reason more than 30 days after its grant. But the holding in *San Mateo I* is not so broad. *Id.* at 4294. At issue in *San Mateo I* was the Branch's decision to rescind, more than five months after its grant of San Mateo's applications to add certain frequencies to its license, upon learning that it had granted San Mateo's applications ahead of an earlier-filed application for the frequencies. *Id.* at 4292–94. The Commission reinstated the grant of San Mateo's applications, concluding that the Branch was not authorized to set aside an action on its own motion once section 1.113(a)'s 30–day period expired. *Id.* at 4294. The Commission also observed that the earlier applicant had failed to file a timely petition for reconsideration challenging

the grant of San Mateo's applications.[10] *Id.* CMMC's case, however, involves the Commission's ability to modify a license under section 316. Thus, *San Mateo I* does not stand for the broad proposition, as CMMC would have it, that a license issued pursuant to delegated authority is generally immune to modification; it holds only that the delegatee may not set its own action aside once the time period for doing so has expired. *Id.*

CMMC's more substantial claim is that the Commission lacked authority to modify its license under section 316 of the Act and section 1.87 of its rules. The gravamen of CMMC's claim is that the Commission cannot bypass the time limit established in section 405 by relying on section 316 because, in its view, the latter section permits the Commission to modify a license based only on changed circumstances following grant of the license. According to CMMC, because a licensee is entitled to "administrative finality," section 316 authorizes the Commission simply to address "changed circumstances following the initial license grant"—not to "revisit initial grants of licenses after the statutory [s]ection 405 period has elapsed." Appellant's Br. at 13. The Commission rejected this contention and so do we.

Under step one of *Chevron*, 467 U.S. at 842–43, we use the customary statutory interpretation tools of "text, structure, purpose, and legislative history" to determine whether the Congress has spoken directly "to the precise question at issue"—here the scope of section 316. *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 297 (D.C. Cir. 2003) (internal quotation and citations omitted). CMMC points to nothing in the text or structure of the Communications Act or in its purpose or legislative history (other than the mere existence of the two provisions) that remotely suggests section 316 is limited by section 405. *See id.* Indeed CMMC offers nary

---

[10] On reconsideration, the Commission further explained that "the erroneous grant of an application can be corrected *sua sponte* more than 30 days after it becomes final only where the grant was premised upon or contains a ministerial error." *San Mateo II*, 16 FCC Rcd at 16504.

an authority to support its interpretation. *See* Appellant's Br. at 13. And the plain language of section 316 does not disclose any such limitation either: The section vests the Commission with the authority to modify a license "either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity." 47 U.S.C. § 316(a)(1). While the section does explicitly restrict the Commission's authority to modify a license—that is, the Commission must find the modification in the public interest, convenience and necessity—it imposes no express limitation on *when* the Commission may do so.[11] *See id.* The significance of the Congress's silence here gains additional meaning, we believe, when section 316 is compared with section 312, which latter section authorizes the Commission to revoke a license or construction permit in certain circumstances. *Id.* at § 312(a)(1)-(7). That the Congress took care to specify in section 312 the circumstances following the grant of a license that warrant its revocation tends to show that if the Congress was focused on post-grant events, it mentioned them. *Id.* The Congress did not do so in section 316, which fact tends to bolster, if only slightly, the conclusion that section 316 is not limited to circumstances occurring after the license grant. We conclude, however, that section 316 is not unambiguous and therefore consider the gloss the Commission has given it under step two of *Chevron*, 467 U.S. at 843.

In its order the Commission asserted that section 316 "contains no limitation on the time frame within which [it] may act to modify a license" and that its action under the section "is not subject to the limitations on revocation, modification or reconsideration imposed by [s]ection 405." *California Metro Mobile Order*, 17 FCC Rcd at 22975. This interpretation reasonably comports with section 316's language. *See* 47 U.S.C. § 316(a)(1). Section 316 grants the Commis-

---

[11] Similarly, section 1.87 of the rules does not impose any time limit on the Commission's modification of a license. 47 C.F.R. § 1.87(a) ("*[w]henever* it appears that a station license . . . should be modified" (emphasis added)).

sion broad power to modify licenses; the Commission need only find that the proposed modification serves the public interest, convenience and necessity. *See id.* No doubt licensees have a strong and legitimate interest in administrative repose, *see, e.g.*, 47 U.S.C. § 405(a), but the Congress gave the Commission the authority in section 316 to override that interest if doing so serves the public interest, convenience and necessity. *See id.* at § 316(a)(1); *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 287 (D.C. Cir. 1971) ("administrative finality is subject to certain powers conferred in the FCC by the Act for appropriate cases" such as license modification power conferred by section 316), *cert. denied sub nom. WHDH, Inc. v. FCC*, 406 U.S. 950 (1972). CMMC's interpretation would, as the Commission pointed out, *see California Metro Mobile Order*, 17 FCC Rcd at 22976, significantly limit the Commission's ability to modify a license in the public interest, convenience and necessity because it would confine the Commission to furthering those interests based only on circumstances following a license grant—a result not even hinted at by the statute's text. *See* 47 U.S.C. § 316(a)(1). Accordingly, because the Commission's interpretation of section 316 is reasonable, we defer to it. *See Chevron*, 467 U.S. at 843.

In addition, CMMC maintains that, even if the Commission is authorized to modify its license under section 316, the Commission acted arbitrarily and capriciously in doing so. CMMC contends that the Commission modified its license in the absence of *actual* interference. Moreover, CMMC contends, the Commission failed to consider a less "draconian" remedy, its good faith reliance on the PCIA's frequency coordination, its interest in "administrative finality" and the costs resulting from the modification, including lost customers, disruption of service and the station's diminished capacity. Appellant's Br. at 15–18.

We think that the Commission's modification of CMMC's license serves the public interest. The Commission expressly rejected CMMC's claim that modification required *actual* interference with PG&E's operations, explaining that the modification was needed to cure an ongoing violation. *Cali-*

*fornia Metro Mobile Order*, 17 FCC Rcd at 22977. The Commission also rejected as unsubstantiated CMMC's claim that the modification would hamper its service. *Id.* at 22977–98. The Commission noted, moreover, that the modification would leave CMMC's other frequencies intact and that, to the extent it caused a "minor" disruption in CMMC's operations, it was "nonetheless in the public interest, as required by [s]ection 316." *Id.* at 22978. Accordingly, the Commission acted neither arbitrarily nor capriciously in modifying CMMC's license. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

**\* \* \***

For the foregoing reasons, we affirm the Commission's order modifying CMMC's license by deleting frequency 153.6125 MHz therefrom.

*So ordered.*