**Daniel J. LIPSMAN, et al., Plaintiffs,**

v.

**SECRETARY OF the ARMY, et al., Defendants.**

**No. CIV. A. 02–0151 RMU.**

United States District Court, District of Columbia.

Sept. 7, 2004.

Thomas Joseph O'Brien, Morgan, Lewis & Bockius, Washington, DC, for Plaintiffs.

Mark E. Nagle, Sheppard, Mullin, Richter & Hampton, Roscoe Howard, Jr., Gary Philip–Matthew Corn, Washington, DC, for Defendants.

## MEMORANDUM OPINION

Granting the Plaintiffs' Motion for Summary Judgment; Denying the Defendants' Motion for Summary Judgment

URBINA, District Judge.

### I.  INTRODUCTION

The plaintiffs, two Army veterans and a veterans services organization (collectively, "the plaintiffs"), bring suit to redress alleged violations of 10 U.S.C. § 1552, the Fifth Amendment, and the Administrative Procedure Act ("APA").  The plaintiffs challenge an amendment to the governing regulations of the Army Board for the Correction of Military Records ("ABCMR") that confers adjudicatory power on staff members who work for, but are not members of, ABCMR to evaluate reconsideration requests submitted by veterans and active members of the Army. This matter now comes before the court on the plaintiffs' and defendants' motions for summary judgment.  Because 10 U.S.C. § 1552 requires that ABCMR itself, not staff members, adjudicate requests for reconsideration, the court grants the plaintiffs' motion for summary judgment and denies the defendants' motion for summary judgment.

### II.  BACKGROUND

#### A.  Factual Background

The plaintiffs in this case are two individuals ("the individual plaintiffs") and one veterans service organization.  Plaintiff Daniel Lipsman served in the United States Army ("Army") until his discharge in 1964.  Compl. ¶ 2. Plaintiff Jose Velez Ocasio also served in the Army until his discharge in 1993.  *Id.* ¶ 3. Plaintiff National Association for Black Veterans ("NABVETS") is a non-profit veterans service organization authorized to bring claims under laws administered by the Department of Veterans Affairs.  *Id.* ¶ 4. The defendants are the Secretary of the Army ("the Secretary"), ABCMR—the board of civilians in the Secretary's office that reviews requests for changes to military records—and Carl Chun, the director of ABCMR ("the director").  *Id.* ¶¶ 5–7.

Section 1552(a)(1) authorizes the Secretary to modify the military record of any current or former member of the Army when such action is "necessary to correct an error or remove an injustice."  *Id.* ¶ 8 (citing 10 U.S.C. § 1552(a)(1)).  The statute provides that "such corrections shall be made by the Secretary acting through boards of civilians."  *Id.* Toward that end, the Secretary established ABCMR to consider and act on corrections requests.  *Id.* (citing 32 C.F.R. 581.3(b) & Army Regulation ("A.R.") 15–185 ch. 1 § 2).

The plaintiffs challenge a February 29, 2000 amendment to the Army regulations that set forth ABCMR's procedures for reviewing two types of reconsideration requests: 1) those received more than one year after the ABCMR action; and 2) those received after ABCMR already considered the applicant's first reconsideration request.  *Id.* ¶ 11 (citing 32 C.F.R. § 581.3(g)(4)(ii) & A.R. 15–185 § 2–15(b)).  As amended, the regulation provides in pertinent part that:

> ABCMR staff will review the request to determine if substantial relevant evidence is submitted showing fraud, mistake of law, mathematical miscalculation, manifest error, or the existence of substantial relevant new evidence discovered contemporaneously or within a short time after the ABCMR's original consideration.  If the ABCMR staff finds such evidence, it will be submitted to the ABCMR for its determination of whether a material error or injustice exists and the proper remedy.  If the ABCMR staff does not find such evidence, the application will be returned to the applicant without action.

32 C.F.R. § 581.3(g)(4)(ii); A.R. 15–185 § 2–15(b).

After ABCMR considered and rejected their first applications for correction, the individual plaintiffs submitted to ABCMR subsequent requests for reconsideration based on new evidence. Compl. ¶ 14. On May 26, 2001, Plaintiff Lipsman submitted a new disability "Rating Decision" from the Department of Veterans Affairs. Pls.' Statement of Undisputed Material Facts ("Pls.' Statement") ¶ 1. On August 7, 2000, Plaintiff Ocasio submitted a new medical opinion, which concluded that the characterization of his medical separation in his records was erroneous. *Id.* ¶ 3. After the ABCMR office received these requests, the director of ABCMR informed the individual plaintiffs that ABCMR staff members had determined that their applications did not contain sufficient evidence "show[ing] fraud, mistake in law, mathematical miscalculation, manifest error, or if there exists substantial evidence discovered contemporaneously or within a short time after the Board's original decision." Letter from Carl Chun to Daniel Lipsman dated Sept. 21, 2001; Letter from Carl Chun to Michael Wildhaber, attorney for Jose Ocasio, dated Oct. 31, 2000. In accordance with the amendment, the individual plaintiffs' applications were returned without action. *Id.*

The plaintiffs allege that the defendants violated their rights under 10 U.S.C. § 1552, the Fifth Amendment, and the APA when ABCMR staff screened the substance of their reconsideration requests to determine whether those requests should be submitted to ABCMR for review. Compl. ¶¶ 21–23. Put simply, the plaintiffs want ABCMR rather than its staff to consider and adjudicate their applications concerning corrections of military records.

## B. Procedural Background

On January 28, 2002, the plaintiffs filed a complaint alleging violation of rights guaranteed under § 1552 to have a board of civilians consider and act on applications for the correction of military records, violation of due process of law under the Fifth Amendment, and violation of the APA. On April 4, 2002, the defendants filed a motion to dismiss for lack of standing and for failure to state a claim on which the court could grant relief. On March 31, 2003, the court denied that motion. On December 22, 2003, both parties filed motions for summary judgment. The court now turns to those motions.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor

and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Legal Standard for Statutory Interpretation by an Agency

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.,* 259 F.3d 731, 736 (D.C.Cir.2001). When the reviewing court's inquiry concerns a matter of statutory interpretation by an agency, the threshold question is "whether Congress has directly spoken to the pre-cise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Cal. Metro Mobile Communications, Inc. v. Fed. Communications Comm'n,* 365 F.3d 38, 43 (D.C.Cir.2004). If the intent of Congress is clear, it is determinative, and the court must "give effect to [its] unambiguously expressed intent." *Id.* However, "if the statute is silent or ambiguous," the court must determine whether the agency's interpretation "is based on a permissible construction of the statute." *Id.*

■ As stated by the Supreme Court, "the power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Where Congress has expressly left a gap for the agency to fill, the agency's regulations have controlling weight unless "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. However, where congressional delegation to the agency is implicit, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. 2778.

■ The first step in any issue of statutory interpretation is to determine whether the words of the statute are unambiguous. *United States v. Wilson,* 290 F.3d 347, 352 (D.C.Cir.2002). If so, then the inquiry ends, and the court must follow the command of Congress. *Id.* The necessity of adhering to the plain language of a statute is, in one sense, a constitutional necessity since the Constitution prohibits judges from substituting their judgments for the judgment of Congress. *Pub. Citi-*

*zen v. Dep't of Justice,* 491 U.S. 440, 468, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring). Consequently, the judiciary must restrict itself to the plain meaning of a statute unless the result reached is absurd or violates an easily perceived legislative purpose. *Wilson,* 290 F.3d at 361.

## C. The Court Grants the Defendants' Motion for Summary Judgment and Denies the Plaintiffs' Motion for Summary Judgment

■ As agreed by both parties, the sole issue before the court is whether A.R. 15–185 § 2–15(b) violates § 1552 by authorizing ABCMR staff members, instead of ABCMR itself, to evaluate reconsideration requests that contain new evidence. Pls.' Mot. for Summ J. ("Pls.' Mot.") at 7–8; Defs.' Opp'n at 1. In light of the plain meaning of 10 U.S.C. § 1552, the court concludes that the defendants' interpretation of § 1552 is impermissible, and that their actions were "arbitrary or capricious" and "not in accordance with law." Accordingly, the court grants the plaintiffs' motion for summary judgment and denies the defendants' motion for summary judgment.

## 1. The Plain Meaning of 10 U.S.C. § 1552 Requires that ABCMR, not staff members, Evaluate Requests for Reconsideration

In cases of statutory interpretation, the court must first look to the words of the statute in question. *Wilson,* 290 F.3d at 352. Where unambiguous, they are decisive. *Id.* Section 1552 governs ABCMR's procedure for the correction of military records and provides in pertinent part that:

the Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an

error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary *acting through boards of civilians* of the executive part of that military department."[1]

10 U.S.C. § 1552(a)(1) (emphasis added). At issue in this case is a February 29, 2000 amendment, which changed the Army's procedure for evaluating reconsideration requests either submitted one year after ABCMR's original action or in cases where ABCMR has already considered one reconsideration request. A.R. 15–185 § 2–15(b). For such evaluations, the amendment provides that:

the ABCMR staff will review the request to determine if substantial relevant evidence is submitted showing fraud, mistake of law, mathematical miscalculation, manifest error, or the existence of substantial relevant new evidence discovered contemporaneously or within a short time after the ABCMR's original consideration. If the ABCMR staff finds such evidence, it will be submitted to the ABCMR for its determination of whether a material error or injustice exists and the proper remedy. If the ABCMR staff does not find such evidence, the application will be returned to the applicant without action. *Id.*

In this case, 10 U.S.C. § 1552(a)(1) expressly requires that the Secretary, when exercising his discretion to correct military records, must "act through boards of civilians." Here, ABCMR is the relevant board of civilians. The main point of contention between the two parties rests on whether § 1552 applies to both original applications for correction and subsequent requests for reconsideration or, as the defendants argue, only the former. The

---

1. The exception laid out in 10 U.S.C. § 1552(a)(2) is inapplicable to this case.

court finds the defendants' interpretation unpersuasive and impermissible.

10 U.S.C. § 1552 does not distinguish between original applications and subsequent requests for reconsideration, but rather, as stated by the statute's own title, covers the "correction of military records." Regardless of whether a serviceman's application is original or subsequent or whether it is labeled as an application or a request, both actions seek the "correction of military records." As such, both actions invoke the statutory guidelines of § 1552. Accordingly, because the plain meaning of § 1552 and the term "correction of military records" encompasses requests for reconsideration, the Secretary was bound to act through the ABCMR, not its staff members. *Wilson,* 290 F.3d at 352.

To refute this plain meaning, the defendants advance three arguments of their own. None is satisfactory. First, by focusing on the first part of 10 U.S.C. § 1552(1)(a), which states that "the Secretary may correct any military record ... when [he] considers it necessary," the defendants assert that this provides the Secretary with discretion over both whether and how to process applications for correction. Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 8–9. Just because § 1552 grants the Secretary discretion over whether or not to correct a military record, however, does not mean that it similarly grants the Secretary discretion over what procedure he may use to make that correction. Again, the statute expressly states that he must "act through a board of civilians," which in this case is ABCMR. The Secretary cannot choose to abide by the first sentence in § 1552, and simply ignore the second.

Second, the defendants allege that, because § 1552 contains no reference to the term "reconsideration," Congress did not intend reconsideration requests to be covered by the statute's guidelines. Defs.' Opp'n at 2. That is to say, according to the defendants, 10 U.S.C. § 1552 pertains only to "original applications for relief" and not "subsequent requests for reconsideration." *Id.* Thus, the defendants contend, reconsideration procedures are "purely a regulatory creation." *Id.* at 4. To support their argument that the omission of the term "reconsideration" is itself indicative of congressional intent, the defendants cite a variety of other statutes where Congress chose to include the term "reconsideration." *Id.* at 4. Admittedly, "[i]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Bluewater Network v. Envtl. Prot. Agency,* 370 F.3d 1, 4 (D.C.Cir.2004) (quoting *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). Here, however, none of the statutes cited by the defendants pertain to § 1552, which is the heart of the dispute in this case. Thus, the statutory guidelines for the ICC, for example, which include a reconsideration provision, indicate nothing about the congressional intent behind 10 U.S.C. § 1552. Defs.' Opp'n at 4 (citing 49 U.S.C. § 722).

Third, the defendants point to subsection (a)(3) of § 1522, which states that "corrections under this section shall be made under procedures established by the Secretary concerned." Defs.' Mot. at 9. Thus, according to the defendants, the Secretary, in authorizing staff adjudication of reconsideration requests, has merely exercised his discretion as to the procedural protocol for the corrections process. *Id.* This argument is unpersuasive as well. If A.R. 15–185 § 2–15(b) were merely a procedural rule, ABCMR's actions would be permissible, because it would simply be following its own discretionary procedure.

Yet despite the defendants' insistence to the contrary, A.R. 15–185 § 2–15(b) is not merely a procedural guideline, but rather a substantive one. *See, e.g., Bond,* 47 Fed. Cl. at 653 (disputes over the composition of a military board are procedural in nature and fall under 10 U.S.C. § 1552(a)(3)). Unlike a procedural challenge regarding the makeup of a military board, however, the plaintiffs here question an amendment which calls on the staff to make substantive judgments on the sufficiency of the submitted evidence. A.R. 15–185 § 2–15(b). There is a significant distinction between authorizing staff members to determine if new evidence is present at all and authorizing staff members to assess the relevance and merit of that new evidence. The former is merely procedural while the latter speaks to ABCMR's substantive decision-making. *See, e.g., Aiken v. Obledo,* 442 F.Supp. 628, 649 (E.D.Cal. 1977) (noting that "[p]rocedural rules are those that relate to the method of operation of the agency, while substantive rules are those with establish standards of conduct or entitlement"). Thus, subsection (a)(3) is irrelevant to the present dispute.

## 2. Neither Judicial Economy Nor the Doctrine of *In Pari Materia* Permit ABCMR Staff Members to Adjudicate Reconsideration Requests

Next, the defendants contend that Congress' concern over judicial economy as evidenced by 10 U.S.C. § 1557 indicates an intent that staff members, rather than ABCMR, can evaluate reconsideration requests. Defs.' Mot. at 11; Chun Depo. at 66. Specifically, the defendants point to Congress' enactment of timeliness standards for the completion of cases within a ten-month period pursuant to 10 U.S.C. § 1557. Defs.' Mot. at 11 (citing 10 U.S.C. § 1557). The court finds this argument unconvincing.

10 U.S.C. § 1557(a) provides timeliness guidelines for the disposition of applications before military corrections boards within a ten-month period. If the secretary of a military department in question fails to meet these guidelines, he must submit a report to the Senate and House Armed Services Committees. 10 U.S.C. § 1557(e). The report must indicate the reasons why the standard was not met as well as any corrective measures initiated. *Id.* As correctly stated by the defendants, Congress' concern for judicial economy and a potential backlog of cases before ABCMR was evident. What is not evident, however, is why this statute in any way suggests that ABCMR may depart from the guidelines of 10 U.S.C. § 1552. The presence of 10 U.S.C. § 1557, in fact, suggests just the opposite. Through 10 U.S.C. § 1557, Congress has set up a surveillance mechanism so that it can monitor the potential backlog of ABCMR cases. If Congress, upon reading the Secretary's annual report, decides that judicial economy warrants a change, then Congress can either amend 10 U.S.C. § 1552, provide ABCMR with more resources, or do nothing. It is not up to ABCMR to perform the duties of Congress or engage in *de facto* law-making. That choice is Congress's alone.

## D. Relief Sought

Finally, the issue remains as to what relief the plaintiffs are afforded. In addition to requesting judgment in their favor, the plaintiffs ask this court to (1) declare that the defendants' actions in refusing to present the individual plaintiffs' requests for reconsideration to ABCMR were unlawful; (2) enjoin the defendants to ensure that in the future, ABCMR's regulations do not permit staff members to determine the materiality, substantiality and relevance of evidence newly submitted in support of requests for reconsideration; (3) enjoin the defendants to consider and, within 90 days of this decision, rule on the

individual plaintiffs' requests for reconsideration with any evidence newly submitted since the previous ABCMR ruling; (4) order that the February 29, 2000 amendment is void; (5) order the defendants to afford all former service personnel, whose second applications for correction of military records were returned by staff members, the opportunity to have their applications considered by ABCMR; and (6) award attorneys' fees for the costs of litigation. Pls.' Mot. at 16–17.

■ The APA provides the court with the authority to

> compel agency action unlawfully withheld or unreasonably delayed; and . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law.

5 U.S.C. § 706. In this situation, a remand to ABCMR of the individual plaintiffs' requests is proper. The individual plaintiffs have not asked that this court consider the merits of their reconsideration requests, and this court does not have that power. *Walker v. Shannon*, 848 F.Supp. 250, 254–55 (D.D.C.1994) (holding that it is not the function of the court to serve as a "super correction board"). Additionally, ABCMR has not had the opportunity to consider the new evidence of the individual plaintiffs. In its evaluation, ABCMR should: (1) conduct a hearing or thoroughly review all of the available evidence, including the new evidence presented by the individual plaintiffs; (2) determine whether the entirety of the evidence warrants a correction of the records; and (3) state, in writing and with the requisite specificity, the evidence considered and the factual and legal basis for the determination reached.

Second, the court orders the defendants to strike the February 29, 2000 amendment, A.R. 15–185 § 2–15(b), from the Army's regulations. In the future, the defendants must ensure that ABCMR staff members may only review initial applications for correction or any subsequent reconsideration requests for the presence of new evidence. If any new evidence is present, the staff must then present the application or request to ABCMR for evaluation on the merits.

■ The plaintiffs also request that this court allow all former service personnel, whose second applications for correction containing new evidence were returned by Board staff under A.R. 15–185 § 2–15(b), to have consideration by ABCMR. An association, such as NABVETS in this case, may demonstrate standing as long as "its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires members' participation in the lawsuit." *Consumer Fed'n of Am. v. Fed. Communications Comm'n*, 348 F.3d 1009, 1011 (D.C.Cir.2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). In the instant case, all three elements are met and the defendants have not contested this issue.[2] Accordingly, the court orders the defen-

---

**2.** The court previously denied the defendants' 12(b)(1) motion to dismiss for lack of standing. *Lipsman v. Sec'y of the Army*, 257 F.Supp.2d 3, 6 (D.D.C.2003). The court noted that the defendants incorrectly based their motion on the belief that NABVETS asserted *jus tertii* standing. In neither the 12(b)(1) motion nor the present motion for summary judgment have the defendants questioned NABVETS' assertion of associational or organizational standing.

dants to afford all members of NABVETS, whose second requests for reconsideration of military records contained new evidence, the opportunity to have their requests considered by ABCMR.

Lastly, the defendants request that the defendants be compelled to pay the plaintiffs' attorney's fees. The Equal Access to Justice Act governs the question of attorney's fees when the United States is a party. 28 U.S.C. § 2412; *Lynom v. Widnall*, 222 F.Supp.2d 1 (D.D.C.2002). This statute provides, in pertinent part, that:

> a party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(B). Accordingly, the court declines to issue judgment on the plaintiffs' request for attorneys' fees until the plaintiffs file the proper application in accordance with this statute, and both parties have had the opportunity to brief this matter.

## IV. CONCLUSION

For all these reasons, the court grants the plaintiffs' motion for summary judgment and denies the defendants' motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately

and contemporaneously issued this 7th day of September 2004.