**Marvin CHISOLM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 07–505C.**

United States Court of Federal Claims.

May 30, 2008.

Marvin Chisolm, Marietta, Georgia, pro se.

Tara J. Kilfoyle, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director, all of Washington, D.C., for defendant. Major Jerrett Dunlap, Military Personnel Branch, United States Army Litigation Division, Arlington, Virginia, of Counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff Marvin Chisolm brings this action *pro se*, seeking correction of his military record and a retroactive promotion with associated back pay, retirement pay adjustments, and other allowances. Plaintiff contends he would have been promoted to the rank of sergeant first class but for an allegedly unjustified adverse Noncommissioned Officer Evaluation Report issued in October 1989. He also contends that the Army Board for Correction of Military Records failed to properly consider his repeated requests for relief, which were made since his honorable discharge in March 1996. The government has moved to dismiss the complaint for lack of jurisdiction, arguing the action is untimely under the applicable statute of limitations. In the alternative, the government has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, due to the preclusive effect of an earlier dismissal by a federal district court. For the reasons stated below, the Court GRANTS the government's motion to dismiss the complaint as untimely and thus encompassing matters not within our jurisdiction.

## I. BACKGROUND

Mister Chisolm's complaint is rather spare on details, but for the purposes of context some of these can be filled in by information contained in his opposition paper, included in the prior court decision, or provided during the oral argument on the motion. In August 1989, Mr. Chisolm was a staff sergeant serving as a wire systems supervisor for the 324th Signal Company, 72nd Signal Battalion. *See* Mem. Supp. Cross–Mot. Summ. J. ("Pl.'s Opp'n"), Tab A at 3. He apparently had differences of opinion with two superiors in his rating chain, the platoon sergeant and the platoon leader. Mister Chisolm thought that the platoon sergeant, who had recently returned from emergency leave, suffered from stress which caused him to disregard soldiers' safety during a training exercise. *Id.* When Mr. Chisolm raised the matter with the platoon leader on August 18, 1989, the latter admitted he allowed the platoon sergeant to operate a private vehicle without a license and in violation of Army regulations. *Id.* After the platoon leader questioned whether the plaintiff was as upstanding as he appeared, Mr. Chisolm responded by stating that he believed his superiors' "conduct did not set a good example." *Id.* at 3–4. The plaintiff was told to pack his bags and return to garrison. *Id.* at 4.

The following week, when the unit returned from the exercise, the platoon sergeant and platoon leader allegedly violated company policy concerning the serving and consumption of alcoholic beverages. *Id.* The plaintiff informed his chain of command of the violations of policy and regulations committed by the platoon sergeant and platoon leader, ultimately bringing the matters to the attention of the 5th Signal Command Inspector General. Tab A to Pl.'s Opp'n at 4. On September 16, 1989, the platoon leader informed Mr. Chisolm that he would be issuing a relief for cause Noncommissioned Officer Evaluation Report ("NCOER" or "evaluation report") due to plaintiff's actions during the exercise. *See id.* at 4, 12. The next month, the NCOER was issued for the period of June through September 1989, adversely evaluating Mr. Chisolm's actions relating to the August exercise. Tab B to Pl.'s Opp'n at 3–4. Plaintiff, believing this evaluation report was issued in retaliation for his criticism of the "unprofessional conduct" of the platoon sergeant and platoon leader, Tab A to Pl.'s Opp'n at 4–5, appealed the NCOER to the Commander of the Army Enlisted Records

and Evaluation Center, who denied the appeal on October 18, 1990. Compl. ¶ 3.[1]

Plaintiff became eligible for promotion to sergeant first class in April 1990, and contends that this promotion would have occurred were it not for the adverse evaluation report. Pl.'s Opp'n at 1; Compl. ¶ 2; *see also* Tr. (Dec. 5, 2007) ("Tr.") at 7. He remained at the rank of staff sergeant when he was honorably discharged on March 31, 1996. *See* Att. 1 to Def.'s Mot. to Dismiss; *see also* Tr. at 4, 11, 16, 30. Plaintiff initially applied to the Army Board for Correction of Military Records ("ABCMR" or "Correction Board") for relief on March 29, 1998. Compl. ¶ 3; Tab E to Pl.'s Opp'n at 6. He requested that the Correction Board remove the "unjust" relief for cause NCOER from his record; promote him retroactively to sergeant first class; and give him the back pay, allowances, and entitlements he would have received at the E–7 pay grade. Tab E to Pl.'s Opp'n at 6. The application was denied on November 30, 1998. Compl. ¶ 3; *see also Chisolm v. Harvey,* No. 06–CV–025, 2007 WL 1500266, at *1 (S.D.Ga. May 21, 2007).

Mister Chisolm submitted a second application to the ABCMR on March 13, 2002. Tab E to Pl.'s Opp'n at 7. This application sought the same relief as the first, differing in only two particulars: plaintiff now checked the box indicating he desired to appear before the Correction Board in Washington, D.C. and explicitly stated that he considered himself a "whistleblower" who suffered a reprisal in violation of the Military Whistleblower Protection Act, 10 U.S.C. § 1034. *See id.* In a letter dated June 19, 2002, the ABCMR apparently informed Mr. Chisolm

that it would not reconsider his application for correction, based on the staff determination that the criteria for reconsideration were not met. *See* Ex. B to Def.'s Reply at 12; *see also* Compl. ¶ 3.

Over the next several months, Mr. Chisolm corresponded with the office of the Deputy Under Secretary of Defense for Program Integration ("Deputy Under Secretary"),[2] attempting to appeal the Correction Board's refusal to reconsider his application. Tab A to Pl.'s Opp'n at 2 (letter of Aug. 22, 2002); Tab B to Pl.'s Opp'n at 1 (letter of Oct. 7, 2002); Tab C to Pl.'s Opp'n at 1–2 (letter of Oct. 31, 2002). It appears Mr. Chisolm was contending that his initial application to the ABCMR was not considered under the whistleblower statute, and that soldiers did not know that such claims could be brought to the Correction Board before Army Regulation 15–185 was amended, effective March 29, 2000, to implement the statute and portions of a related military directive. *See* Tab C to Pl.'s Opp'n at 1. Plaintiff applied to the ABCMR for a third time on January 8, 2003. *Chisolm,* 2007 WL 1500266, at *1.[3] This application was accepted but the Correction Board denied the request for relief in August 2003, *see id.,* determining that Mr. Chisolm "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." Tab E to Pl.'s Opp'n at 2. In addition to rejecting the whistleblower claim as unsubstantiated, the Correction Board noted that plaintiff's promotion to sergeant first class was speculative even were the NCOER expunged; that the statute of limitations had run before he had brought the claims; that Mr. Chisolm never "perform[ed]

---

1. A few weeks after the NCOER was issued, Mrs. Theresa A. Chisolm apparently addressed a letter to the Commander–in–Chief of the United States Army, Europe, alleging "leadership incompetency" on the part of the platoon sergeant and platoon leader. *See* Tab A to Pl.'s Opp'n at 4. According to plaintiff, the Fifth Signal Command Inspector General responded with an inquiry which found that these officers acted improperly. *See id.* at 4, 6. Plaintiff did not produce the Inspector General's letter on the subject—apparently dated April 26, 1990—as part of his appeal to the Commander of the Army Enlisted Records and Evaluation Center, citing "Mrs. Chisolm's rights to privacy." *See id.* at 6.

2. The Deputy Under Secretary is delegated to act on behalf of the Secretary of Defense to determine appeals of whistleblower claims brought before military record correction boards under 10 U.S.C. § 1034. *See* DEPARTMENT OF DEFENSE, DIRECTIVE No. 7050.06, MILITARY WHISTLEBLOWER PROTECTION § 5.2 & enc. 3.3.5 (2007); DEPARTMENT OF DEFENSE, DIRECTIVE No. 7050.6, MILITARY WHISTLEBLOWER PROTECTION § 5.2 & enc. 2.3.5 (2000).

3. A copy of this application was not among the documents submitted to the Court, but an undated letter written by the plaintiff references a DD Form 149 dated January 8, 2003. *See* Tab G to Pl.'s Opp'n at 1.

duties at the increased rank and responsibility"; and that it was "not in the interest of justice to waive the statute," as laches would bar plaintiff's claims given the nine years that elapsed from issuance of the evaluation report until the initial application for relief was submitted. *Id.*

Unsatisfied with this outcome, Mr. Chisolm persisted in attempting to have his record corrected. On October 7, 2003 he wrote again to the office of the Deputy Under Secretary, challenging the bases of the ABCMR's August 2003 decision. Tab D to Pl.'s Opp'n at 1–2. Among other things, he contended that his applications were not untimely because soldiers only learned of their ability to bring whistleblower claims to a Correction Board, under 10 U.S.C. § 1034, when an Army regulation was issued in February 2000. *Id.* at 1. He also tried another tack, writing a letter to United States Senator Saxby Chambliss, which was in turn forwarded to the ABCMR. *Chisolm,* 2007 WL 1500266, at * 1. After receiving a response from the Correction Board's director in December 2004 informing him that no further review of his claims was available, *id.,* Mr. Chisolm wrote back on January 8, 2005 requesting that the ABCMR reverse its decision. Tab E to Pl.'s Opp'n at 1.

The Correction Board's director responded on February 15, 2005, explaining that one of the board's regulations concerning reconsideration was deleted by court order and that Mr. Chisolm's application did not qualify for reconsideration under the remaining criteria. Tab G to Pl.'s Opp'n at 36. As a consequence, the application was returned without Correction Board action. *Id.* The director was apparently referring to the September 2004 district court decision in *Lipsman v. Secretary of the Army,* 335 F.Supp.2d 48 (D.D.C.2004), which invalidated a provision of Army Regulation 15–185 that had delegated to the Correction Board staff the power to make the substantive judgment whether certain reconsideration requests should be considered by the board. *See Lipsman,* 335 F.Supp.2d at 54–56. Plaintiff was further

informed that "[t]he ABCMR will not consider any further requests for reconsideration of this matter," and his attention was called to "the option to seek further relief in a court of appropriate jurisdiction." Tab G to Pl.'s Opp'n at 36.

The next month, plaintiff wrote again to Senator Chambliss, seeking reconsideration of his application and arguing that he should be exempted from the court-ordered change to the Army's regulations. Tab F to Pl.'s Opp'n at 1 (letter of Mar. 2, 2005). This request was forwarded to the ABCMR, and the board's director responded in a letter dated January 18, 2006. *Id.* at 2–3. The director explained that Mr. Chisolm's claim was considered and denied by the ABCMR in 1998, and then reconsidered and again denied in 2003. *Id.* at 2. Under what remained of the Army regulation, soldiers would be allowed only one reconsideration of an ABCMR decision, and the request must be made within one year of the decision and must rely on new evidence or argument. *Id.* Plaintiff's request failed on all three grounds. He was told that the 2003 denial of reconsideration was "the final administrative action taken by the Secretary of the Army," and that there was "no further ABCMR action contemplated as you have exhausted all administrative remedies in this matter and are not eligible for further reconsideration by this Board." *Id.* Mister Chisolm was again informed that the Correction Board would consider no further requests for reconsideration of his application, and that he had the option to seek judicial relief. *Id.* at 3.

Plaintiff made one final attempt to have his request for correction approved at the agency level, submitting another letter to the Deputy Under Secretary in February 2006. Tab G to Pl.'s Opp'n at 1–5.[4] By this time, as a result of his administrative odyssey, Mr. Chisolm's grievance had grown to encompass more than just displeasure with the result of the 1998 and 2003 ABCMR decisions. Plaintiff now contended that the ABCMR director should have presented his various reconsideration requests to the ABCMR for action,

---

4. This letter is undated, but plaintiff maintains that it was written in February 2006. *See* Tab A

to Pl.'s Opp'n at 1; Ex. C to Def.'s Reply at 12.

rather than returning them. *Id.* at 2. He asserted that the Correction Board should have asked the Inspector General of the Department of Defense to gather evidence under 10 U.S.C. § 1034(f).[5] *Id.* at 3. And he also faulted the Correction Board for not heeding his requests to appear before the board. *Id.* He closed by requesting that the Secretary of Defense personally review his case. *Id.* at 4.

On February 21, 2006, Mr. Chisolm filed suit in the United States District Court for the Southern District of Georgia, naming the Secretary of the Army and the director and members of the ABCMR as defendants. *See* Ex. A to Def.'s Reply; *Chisolm*, 2007 WL 1500266, at *1. Plaintiff's complaint was handwritten on a form provided for *pro se* litigants. Ex. A to Def.'s Reply. In the section of the form for the statement of the claim, Mr. Chisolm discussed the failure of the Correction Board to remove the adverse NCOER, to retroactively promote him to sergeant first class, and to award him the back pay and entitlements of an E–7 pay grade. *Id.* at 3. He stated that the Army improperly supervised the ABCMR staff, allowing the director to return plaintiff's reconsideration requests instead of having the Correction Board consider new evidence. *Id.* He contended that the ABCMR failed to provide him a hearing at which he could appear and testify, failed to consider all relevant evidence, and failed to request that the Inspector General of the Department of Defense gather further evidence. *Id.* In the section of the form for the relief sought, plaintiff requested not only that the various parties be ordered to properly perform their duties and explain their conduct, but that the court also order the Secretary of the Army to promote him to the higher pay grade and remove the adverse NCOER. *Id.* at 4.

Mister Chisolm's district court complaint did not specify any dollar amount for the back pay he sought. *See id.* at 4. During the course of litigation, the government apparently calculated the indeterminate back pay requested by plaintiff and concluded that this amount exceeded $52,000; plaintiff then adopted this figure as his own. *See* Ex. C to Def.'s Reply at 1, 8, 10; *see also* Tr. at 31–32. As this amount greatly exceeded the $10,000 limit on district court jurisdiction of back pay claims against the federal government under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), the government moved to dismiss the complaint for lack of subject matter jurisdiction. Ex. B to Def.'s Reply at 7–8. The government also moved to dismiss the case for lack of jurisdiction on statute of limitations grounds, *Id.* at 8–9, and moved to dismiss the complaint for failure to state a claim upon which relief may be granted, arguing that the matter was not justiciable. *Id.* at 9–11.

In an order issued May 21, 2007, the district court noted that "non-tort monetary claims in excess of $10,000.00 must be brought in the United States Court of Federal Claims," and recognized that whether it "may exercise jurisdiction over Plaintiff's claims at all is dubious from the outset." *Chisolm*, 2007 WL 1500266, at *2 n. 2. Rather than determine whether the claim exceeded the jurisdictional limit, the district court proceeded by "[a]ssuming but not deciding that the Court might otherwise have jurisdiction over Plaintiff's claims," *Id.* at *2, and dismissed the matter without prejudice for lack of jurisdiction on statute of limitations grounds. *Id.* at *2–4. The district court found that plaintiff's claims accrued either in 1990 when the adverse NCOER was upheld, or in 1996 when he was honorably discharged; and that, in either event, the case was time barred under the six year limitations period of 28 U.S.C. § 2401(a). *Id.* at *2. The court also held that the case was time barred if the complaint were construed as attempting a challenge to the 1998 ABCMR decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–708,

---

5. Although Mr. Chisolm frequently invokes the Military Whistleblower Protection Act, he does not claim that he has *ever* submitted an allegation of a violation of this act to an authorized Inspector General, let alone within sixty days of the alleged retaliation. *See* 10 U.S.C. § 1034(c)(3) (1988). Thus, at least from the incomplete record before the Court, it does not appear that plaintiff ever properly lodged an allegation under this act entitling him to an investigation.

as such a claim would accrue at the time of the decision. *Id.* at \*3.[6]

Mister Chisolm then brought the matter to our court, filing a complaint on July 6, 2007. He alleges that the Secretary of the Army, the director of the Correction Board, and the ABCMR acted in an arbitrary and capricious manner in not removing the adverse NCOER from his record. Compl. ¶ 2. The complaint identifies his unsuccessful internal appeal of the NCOER (resulting in the evaluation report being upheld on October 18, 1990), and his initial March 29, 1998 application to the ABCMR. *Id.* ¶ 3. It lists the ABCMR's November 30, 1998 denial of his application, the reconsideration denial from August 2003, and the letters refusing reconsideration dated June 19, 2002 and January 18, 2006. *Id.* The complaint also references the district court action. *Id.* ¶¶ 4–5. Plaintiff seeks a correction of his military record, a promotion, and more than $52,000 in monetary relief, apparently based on the back pay he would have received had he been promoted to sergeant first class. *Id.* ¶ 1; *see also id.* at 2 (prayer for judgment requesting $52,713); Pl.'s Opp'n at 1 (explaining money damages claim to be based on difference between base pay at an E–7 pay grade and an E–6 pay grade, plus allowances); Tr. at 10–11.

## II. DISCUSSION

The government has moved to dismiss this case on two separate grounds. The government argues that Mr. Chisolm filed his complaint more than six years after his claims first accrued, and thus this case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss ("Def.'s Mot.") at 3–7; Def.'s Reply at 2–5. The government also moves to dismiss the case for failure to state a claim upon which relief can be granted, under RCFC 12(b)(6). The basis of this alternative motion is the preclusive effect of the district court decision dismissing the same claims for lack of subject matter jurisdiction. Def.'s Mot. at 7–15; Def.'s Reply at 7–11. Mister Chisolm opposes the government's motion, contending that his claims did not accrue until the final action by the ABCMR in rejecting his reconsideration requests; that "the interest of justice" exception to the three-year limitations period applicable to the ABCMR, 10 U.S.C. § 1552(b), should be applied to his complaint; and that no preclusive effect can be given the judgment of a court that lacked subject matter jurisdiction over the case. Pl.'s Opp'n at 8–9, 12–13.[7]

### A. Applicable Legal Standards

■ The government's motion under RCFC 12(b)(1) is based on the general limitations period for filing claims in our court, which provides: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000). Although this statute of limitations had been characterized as implicating "jurisdiction" for over a century—dating back to cases brought in our predecessor court, *see, e.g., Kendall v. United States,* 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1883)—there more recently developed some confusion over whether this meant "subject matter jurisdiction" or something else. *See Bolduc v. Unit-*

---

6. The district court also opined that Mr. Chisolm's claims would not have been justiciable even were they timely, as they concerned a discretionary military promotion decision. *Chisolm,* 2007 WL 1500266, at \*3. This finding would have resulted in a dismissal on the merits, for failure to state a claim upon which relief can be granted. *See Miller v. United States,* 29 Fed. Cl. 107, 115–17, 122 (1993); *see also Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993) (explaining that "[j]usticiability is distinct from jurisdiction"). But since the district court determined that it lacked jurisdiction, and this determination was not overturned on appeal, the justiciability discussion never ripened beyond mere

dictum. *See, e.g., Doko Farms v. United States,* 956 F.2d 1136, 1142 (Fed.Cir.1992) (citing *Block v. North Dakota,* 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)); *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1279 (7th Cir.1983); *Vorachek v. United States,* 337 F.2d 797, 800 (8th Cir.1964).

7. Mister Chisolm combined his opposition to the government's motion with a cross-motion for summary judgment. Consideration of his cross-motion was stayed pending the determination of the government's motion to dismiss. *See* Order (Nov. 1, 2007).

ed States, 72 Fed.Cl. 187, 189–92 (2006). The Supreme Court has seemingly settled the matter with its opinion in *John R. Sand & Gravel Co. v. United States*, which held that our statute of limitations could not be waived by the government due to its jurisdictional nature. — U.S. ——, ——, ——–——, 128 S.Ct. 750, 752, 754–55, 169 L.Ed.2d 591 (2008).[8] Accordingly, a motion to dismiss a matter from our court due to the expiration of the statute of limitations period concerns a lack of subject matter jurisdiction and is thus properly brought under RCFC 12(b)(1).

Normally when considering a motion to dismiss—even one based on the lack of subject matter jurisdiction—a court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir.2002); *Englewood Terrace Ltd. P'ship v. United States*, 61 Fed.Cl. 583, 584 (2004). When jurisdictional facts are challenged, however, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. GMAC*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). In examining jurisdictional facts, a court may consider all relevant evidence, including material outside the pleadings. *See Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Indium Corp. of Am.v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985); *Forest Glen Props., LLC v. United States*, 79 Fed.Cl. 669, 676–78 (2007); *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005).

Under RCFC 12(b)(6), a complaint will not be dismissed for failure to state a claim

"unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000) (dismissal appropriate "when the facts asserted by the plaintiff do not entitle him to a legal remedy").

## B. Analysis

The government styles its alternative motion to dismiss, based on the preclusive effect of the district court decision, as one brought under RCFC 12(b)(6), for failure to state a claim upon which relief can be granted. If that is the proper vehicle for the motion based on preclusion, then the Court should first consider the statute of limitations ground for dismissal—as that ground concerns subject matter jurisdiction, and a court must first be satisfied that it has jurisdiction before any merits questions may be reached. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In *Steel Company*, the Supreme Court emphatically rejected the concept of "hypothetical jurisdiction," whereby a court would overlook jurisdictional difficulties and decide a case on a simpler, merits-based ground. *Id.* at 93–102, 118 S.Ct. 1003. On the other hand, if the 12(b)(6) label is inaccurate, and the preclusion ground is in substance one that challenges subject matter jurisdiction, the order of consideration would be flipped. The Supreme Court has held that "there is no unyielding jurisdictional hierarchy" dictating which of two jurisdictional questions take precedence, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), and allows courts to decide the less difficult of the two. *Id.* at 588, 119 S.Ct. 1563.[9] If the

---

**8.** The modifier "seemingly" is included in this statement because the Supreme Court curiously refrained from using the term "subject matter jurisdiction" even once in its opinion, and instead rested its conclusion on the limitations period in question being "more absolute." *See John R. Sand*, 128 S.Ct. at 753–54. But since *sua sponte* dismissal of cases rests on a lack of jurisdiction of the subject-matter kind, *see, e.g., Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), it is unlikely that the Supreme Court's failure to use the label "subject matter jurisdiction" has any significance.

**9.** This is true even when one of the jurisdictional questions is of the waivable, personal jurisdiction

preclusion ground were really a question of jurisdiction, it would undoubtedly be easier to adopt the decision of another court than to consider a matter anew.

■ Here, the government contends that both variants of *res judicata*—claim preclusion and issue preclusion (also known as collateral estoppel)—would apply. Def.'s Mot. at 8–15. Under the doctrine of claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citing *Comm'r v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) and *Cromwell v. County of Sac,* 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877)). Claim preclusion employs the common law concepts of merger and bar, *see Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), and is not limited to the legal theories litigated but extends to all remedies concerning the "particular factual transaction or series thereof on which a suit is brought." *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 479 (Fed.Cir.1991). As claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion. *See, e.g., Pactiv Corp. v. Dow Chem. Co.,* 449 F.3d 1227, 1229–30, 1233–34 (Fed. Cir.2006) (affirming a dismissal on claim preclusion grounds under Fed.R.Civ.P. 12(b)(6)); *Bander v. United States,* 161 Ct.Cl. 475, 476–80, 484 (1963) (dismissing case for failure to state a claim upon which relief can be granted, based on claim preclusion); *Hornback v. United States,* 56 Fed.Cl. 359, 361–63 (2003), *aff'd* 91 Fed.Appx. 679 (Fed.Cir.2004).

■ But while claim preclusion can be raised in an RCFC 12(b)(6) motion, it is clear that claim preclusion does not apply in the circumstances presented in this case. The government cites the Supreme Court decision in *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), for the proposition that a dismissal on statute of limitations grounds is considered a judgment on the merits. Def.'s Reply at 10–11. But *Plaut,* and the authorities it relied upon, did not concern statutes of limitations which, like ours, are restrictions on subject matter jurisdiction. *See Plaut,* 514 U.S. at 228, 115 S.Ct. 1447 (citing Fed. R.Civ.P. 41(b) and *United States v. Oppenheimer,* 242 U.S. 85, 87–88, 37 S.Ct. 68, 61 L.Ed. 161 (1916)). To the contrary, *Plaut* relied on the procedural rule which specifies that when a court order is silent concerning whether a dismissal is an adjudication upon the merits, it is deemed to be so *if it is not based on a lack of jurisdiction.* Fed. R.Civ.P. 41(b). Because the statute of limitations governing non-tort money claims against the federal government is a restriction on jurisdiction, *see John R. Sand,* 128 S.Ct. at 753–54, dismissals under this statute are for lack of jurisdiction, and thus cannot be an adjudication of the merits. *See Costello v. United States,* 365 U.S. 265, 285–86, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (explaining that Rule 41(b) follows the common law rule that dismissals for lack of jurisdiction do not bar "a subsequent action on the same claim"); *N.J. Inst. of Tech. v. Medjet, Inc.,* 47 Fed.Appx. 921, 925 (Fed.Cir.2002) (holding that "[t]here simply was no 'on the merits' adjudication ... because the lawsuit was dismissed for lack of subject matter jurisdiction"); *John v. United States,* 77 Fed.Cl. 788, 819 (2007) ("It is well established that a dismissal for lack of jurisdiction does not constitute a final judgment on the merits and therefore has no res judicata effect."); RCFC 41(b) (following Fed.R.Civ.P. 41(b) in all pertinent respects).[10] Accordingly, the Court holds that a dismissal on statute of limitations grounds cannot be the basis for claim preclusion in our court.

■ This leaves us with the issue preclusion ground for the government's motion.

variety. *See Ruhrgas,* 526 U.S. at 583–87, 119 S.Ct. 1563.

10. Indeed, it would be nonsensical to contend that claim preclusion—which bars not just what was litigated, but certain other issues which "could have been raised," *Federated Dep't Stores,* 452 U.S. at 398, 101 S.Ct. 2424—can be based on a dismissal for lack of jurisdiction, since such a decision means that even the claims brought *could not have been raised* in that forum.

Under issue preclusion, or collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The government argues that the district court actually and necessarily determined that Mr. Chisolm's complaint is time barred, and that this determination may not be relitigated in our forum. Def.'s Mot. at 10–13.[11] The result of such preclusion would be not the establishment of an affirmative defense, as could be accomplished under RCFC 12(b)(6), but rather the establishment of a lack of jurisdiction. Thus, this aspect of the government's alternative motion should be considered under RCFC 12(b)(1).[12] *See Lowe v. United States*, 79 Fed.Cl. 218, 228 (2007) ("It is beyond cavil that the issue of collateral estoppel goes to subject matter jurisdiction, and may be pleaded as a 12(b)(1) motion."). As the court is presented, then, with two motions which concern subject matter jurisdiction, the government's alternative motion will be considered first.

### 1. The Preclusive Effect of the District Court Decision

Following Federal Circuit precedents, the district court determined that the latest Mr. Chisolm's back pay claims could have accrued was in 1996, at the time of his honorable discharge. *Chisolm*, 2007 WL 1500266, at *2. His complaint was filed "roughly ten years" later, in 2006, *Id.* at * 1–2, well after the expiration of the six-year statute of limitations period for bringing non-tort monetary claims against the federal government in a district court. *See* 28 U.S.C. § 2401(a). As a consequence, the district court dismissed the complaint for lack of jurisdiction. *Chisolm*, 2007 WL 1500266, at *4.

The same six-year statute of limitations period applies to back pay claims brought in

our court. 28 U.S.C. § 2501. The government thus argues that Mr. Chisolm has already litigated and lost on the issue of whether he can timely file a claim for back pay more than six years after the date of his discharge from the Army. *See* Def.'s Mot. at 10–11. Without question, that identical issue was actually litigated by the same parties in the district court case, and its determination was necessary to the court's judgment. *See Chisolm*, 2007 WL 1500266, at *2. Thus, three of the four factors required for the application of collateral estoppel are satisfied. *See Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed.Cir.2000). Concerning the fourth factor—that "the party defending against preclusion had a full and fair opportunity to litigate the issues," *id.*—Mr. Chisolm argues that he was not given such an opportunity, as the district court lacked jurisdiction over money claims as large as his. *See* Pl.'s Opp'n at 13; Tr. at 45–47. Not unreasonably, given his *pro se* status, he contends that the district court should have transferred the case to our court once it realized that his claims exceeded the Little Tucker Act limit of $10,000. Tr. at 45.

Plaintiff in essence argues that the district court should not be considered a court of competent jurisdiction for determining any issues relating to his claims, for he seeks (and sought in the district court) more than $10,000 in back pay. Since his back pay claims fall within our court's exclusive jurisdiction, he contends that the district court decision should have no preclusive effect. To this, the government retorts that Mr. Chisolm chose to invoke the district court's jurisdiction, and cannot now collaterally attack that court's decision in our court. Def.'s Reply at 8. Of course, a "District Court has jurisdiction to determine its jurisdiction," *Land*, 330 U.S. at 739, 67 S.Ct. 1009, and once a court has determined that it *has* jurisdiction, this decision must be challenged on direct appeal, and not in a separate law-

---

11. The government also contends that the district court's determination that the matter was not justiciable should be given preclusive effect. Def.'s Mot. at 10–12. But this portion of the order was mere dictum. *See supra* note 6.

12. When ruling upon a motion to dismiss, a court is not bound by the label *(i.e.,* RCFC 12(b)(1) or 12(b)(6)) placed on the motion by the government. *See, e.g., Borough of Alpine v. United States*, 923 F.2d 170, 171–72 & n. 1 (Fed.Cir. 1991); *Bolduc*, 72 Fed.Cl. at 189–92.

suit filed in a different court. *See Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

But this case raises what appears to be a novel issue. This is not a matter in which a disappointed litigant is attempting to undermine a court's decision that it had jurisdiction. *Cf. Int'l Air Resp. v. United States,* 302 F.3d 1363, 1368–69 (Fed.Cir.2002) (holding that the government could not collaterally attack a district court's determination that a stay order issued under the All Writs Act was within its jurisdiction). Mister Chisolm agrees with the district court that the latter lacked subject matter jurisdiction. He merely contends that the district court lacked subject matter jurisdiction for a more basic reason—a reason, moreover, that was acknowledged but left unresolved by the district court. *See Chisolm,* 2007 WL 1500266, at *2 n. 2 (describing the court's jurisdiction as "dubious from the outset" due to the Little Tucker Act monetary limits). This is far from a trivial argument. There exists persuasive precedent demonstrating that issues determined by another court, in that court's process of deciding that it lacked jurisdiction, could have preclusive effect in the determination of our court's jurisdiction. *See, e.g., Tindle v. United States,* 56 Fed.Cl. 337, 340, 348–49 (2003). But binding precedent recognizes the rule "that a court vested with exclusive jurisdiction to decide an issue is not precluded from deciding it, although it had been previously decided by another court as an incidental fact necessary to be determined in order to decide an issue within its jurisdiction." *Edgar v. United States,* 145 Ct.Cl. 9, 14, 171 F.Supp. 243 (1959).

This rule distinguishes between *incidental facts* and *issues.* Under this rule, incidental facts that bear on an issue coming within the exclusive jurisdiction of one court are not the basis for preclusion when decided by a different court. On the other hand, an *issue* that would otherwise fall within a first court's jurisdiction may be decided by that court with preclusive effect for subsequent courts—even when the first court decides, as a consequence, that it lacks jurisdiction. In

*Edgar,* for instance, the district court determination that the plaintiff failed to exhaust administrative remedies was necessary to the court's decision to dismiss an action seeking a declaratory judgment. *See id.* at 11, 171 F.Supp. 243. Although that identical issue would conclusively determine our predecessor court's power to provide the plaintiff a monetary remedy that was not available in the district court, the difference in relief sought was immaterial. Since the district court had "authority to determine the issue within the scope of its jurisdiction, all other courts are estopped from subsequently relitigating the same issue." *Id.* at 16, 171 F.Supp. 243. Similarly, in *Tindle* the district court's determination of the date plaintiff's claim accrued for purposes of a lawsuit under the Federal Tort Claims Act resolved the same issue that was germane to the question whether the statute of limitations barred a suit in our court for back pay. *Tindle,* 56 Fed.Cl. at 348–49.

In Mr. Chisolm's case, the issue of when his back pay claims accrued had nothing to do with the district court's jurisdictional determination regarding the APA claim, which was based instead on the date of the ABCMR decision. *See Chisolm,* 2007 WL 1500266, at *3. The issue only pertained to Mr. Chisolm's efforts to receive back pay and related allowances. But Mr. Chisolm sought much more than $10,000, *see* Ex. C to Def.'s Reply at 1, 8, 10, and thus his back pay claims would not have come within the jurisdiction of the district court, regardless of their timeliness. *See* 28 U.S.C. § 1346(a)(2). His situation would be no different if he had mistakenly filed his complaint with the United States Tax Court, only to have it dismissed on statute of limitations grounds rather than as falling outside that court's jurisdiction under 26 U.S.C. § 7442.

Had the district court determined that plaintiff sought less than $10,000, its determination that his back pay claims accrued no later than 1996 would have involved an issue within its jurisdiction. Perhaps the same would have been true if the district court had interpreted the Little Tucker Act to allow claims greater than $10,000 when a complaint on its face requests no specific amount of

money, even were this interpretation to be incorrect (which would be a matter for the appellate court, not us). But instead the district court merely noted that its subject matter jurisdiction was "dubious from the outset," and reached the statute of limitations issue for the back pay claims only by "[a]ssuming *but not deciding* that the Court might otherwise have jurisdiction over Plaintiff's claims." *Chisolm*, 2007 WL 1500266, at n. 2 & *2 (emphasis added). Of course, since the statute of limitations issue was also one concerning subject matter jurisdiction, there was nothing improper about the district court's decision to dismiss on that basis rather than on another jurisdictional ground. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *cf. Ruhrgas AG*, 526 U.S. at 578, 588, 119 S.Ct. 1563 (holding a court may pass over a question of subject matter jurisdiction and dismiss a case on a simpler personal jurisdiction ground). The statute of limitations decision should, as a consequence, estop Mr. Chisolm from relitigating the issue in another district court—as those courts share the same subject matter jurisdiction.

But in deciding whether the district court's decision can preclude litigation of the statute of limitations issue in our court, another factor must be considered—the decision of Congress to give our court exclusive jurisdiction over military back pay claims larger than $10,000. In employing a variant of "hypothetical jurisdiction"—an approach rejected by the Supreme Court when used as the gateway to a ruling on the merits, *see Steel Co.*, 523 U.S. at 93–95, 101–02, 118 S.Ct. 1003—the district court reached the question of whether claims were timely filed, even though the question loomed whether those claims were of the variety that Congress withheld from the jurisdiction of district courts. As was discussed above, considerations of jurisdiction are normally crucial in determining whether issue preclusion may apply. This was the point of the *Edgar* decision, which applied section 71 of the Restatement of the Law of Judgments. *Edgar*,

145 Ct.Cl. at 13–14, 171 F.Supp. 243. That section provided: "Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly." *Id.* at 13, 171 F.Supp. 243 (quoting RESTATEMENT OF JUDGMENTS § 71(1942)).

In *Edgar*, the Court of Claims considered the third illustration of the rule—which concerned suits in courts of limited jurisdiction—and explained its applicability to the federal courts system, in which all courts have limited jurisdiction. The rule was found to apply only "if the second court has exclusive jurisdiction to decide the issue or determine the fact." *Id.* at 14, 171 F.Supp. 243. As we have seen, the date of accrual of Mr. Chisolm's back pay claims related solely to the back pay claims, and would thus be an issue within our exclusive jurisdiction were plaintiff requesting more than $10,000 in monetary relief.

The current Restatement retains the importance of jurisdictional differences when issue preclusion is applied (or not). The corresponding section provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [when]. . . .
>
> (3) A new determination of the issue is warranted . . . by factors relating to the allocation of jurisdiction between them. . . .

RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982).[13]

Following the guidance of these Restatements, and the precedent of *Edgar*, the Court concludes that issue preclusion is not warranted in these circumstances. To the normal concern regarding the "allocation of jurisdiction" between our court and the district courts must be added the issue of sovereign immunity. Because a waiver of sovereign immunity was required to allow cases

---

13. Our court has followed this section of the Restatement. *See, e.g., Adams v. United States*, No. 00–447C, 2003 WL 22339164, at *5 n. 9 (Fed.Cl. Aug.11, 2003); *1902 Atl. Ltd. v. United States*, No. 637–87L, 1990 U.S. Cl.Ct. LEXIS 43, at *17 n. 9 (Mar. 13, 1990).

such as Mr. Chisolm's to be brought against the government, courts must take particular care that jurisdictional assignments are respected. In *Christopher Village, L.P. v. United States,* this concern led the Federal Circuit to hold that a decision of the Fifth Circuit was "void" and "not entitled to preclusive effect." 360 F.3d 1319, 1333 (Fed.Cir. 2004). That case involved a declaratory judgment ordered by the Fifth Circuit that purported to find the government liable for breach of contract, when the resulting money damages would have exceeded $10,000. *See id.* at 1321, 1324. The Federal Circuit determined that Congress had not waived sovereign immunity to allow such a declaratory judgment action under the APA. *Id.* at 1327–29. Because the Fifth Circuit's decision would have decided a matter which Congress placed within our exclusive jurisdiction, the Federal Circuit concluded that this ruling "did not merely exceed the court's jurisdiction, it 'directly implicat[ed] issues of sovereign immunity' and is therefore void." *Id.* at 1333 (quoting *Int'l Air Resp. v. U.S.,* 324 F.3d 1376, 1380 (Fed.Cir.2003)).

This case cannot be distinguished from *Christopher Village,* at least inasmuch as in both cases another federal court decided an issue that is within our exclusive jurisdiction. The only difference is that Mr. Chisolm does not require nearly so dramatic an action as holding void another court's decision. In *Christopher Village,* the Federal Circuit followed the Restatement provision that allows a court to entertain a collateral attack on another court's jurisdiction when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." *Id.* at 1330 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12(2)). But we are not faced with another court's decision that it possessed jurisdiction to be exercised. Rather, the district court determined that it *lacked* jurisdiction over the matter, and *explicitly refrained* from deciding whether the case came under its Little

Tucker Act jurisdiction (which it recognized was in any event "dubious"). *Chisolm,* 2007 WL 1500266, at *2 & n. 2. Thus, no collateral challenge or second-guessing of the district court's determination of its own jurisdiction is involved.

■ The Federal Circuit has emphasized that issues within our court's exclusive jurisdiction must be decided in the first instance in our court. *See Christopher Vill.,* 360 F.3d at 1332–33; *see also Jan's Helicopter Svc., Inc. v. FAA,* 525 F.3d 1299, 1308–09 (Fed. Cir.2008) (holding that claims exceeding the Little Tucker Act limit should be transferred to our court by district courts without any examination of the merits, to respect Congress's decision to vest us with exclusive jurisdiction). The question of when Mr. Chisolm's back pay claims accrued is just such an issue. Accordingly, the Court holds that when a district court dismisses a case for lack of jurisdiction on a ground that would apply in our court, and reaches that ground by assuming "hypothetical jurisdiction" over claims which, on their face, fall within our exclusive jurisdiction, the district court decision does not preclude our court from deciding the issues in question. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(3). The government's motion to dismiss this case on the ground of collateral estoppel is therefore DENIED.[14]

### 2. The Statute of Limitations

The Court thus ends up where the government's motion began—defendant's primary ground for dismissal, that Mr. Chisolm's claims are barred because his complaint was filed after the statute of limitations period had expired. Def.'s Mot. at 5–7. Under 28 U.S.C. § 2501, plaintiff had six years from the time his claims first accrued to bring them to our court. It is clear that Mr. Chisolm's complaint was filed long after the limitations period expired.

14. The Court also notes that had the district court dismissed the case on the ground that the damages sought exceeded the Little Tucker Act limit, rather than passing on that question, the Federal Circuit has left open the possibility that such a dismissal could be viewed as a construc-

tive transfer under 28 U.S.C. § 1631. *See Henke v. United States,* 60 F.3d 795, 800–01 (Fed.Cir. 1995). Thus, even if the statute of limitations ground had been reached in the alternative, the issue could perhaps have been revisited in our court under this approach.

■ While Mr. Chisolm complains that the ABCMR and Secretary of the Army failed to remove the adverse evaluation report from his Army record, his back pay claims rest on the theory that this report prevented his promotion. Compl. ¶ 2. The NCOER was issued in October 1989. *See* Tab B to Pl.'s Opp'n at 3. Mister Chisolm's appeal of this report to the Commander of the Army Enlisted Records and Evaluation Center was denied on October 18, 1990. Compl. ¶ 3. A claim first accrues under section 2501 " 'when all the events have occurred which fix the liability of the Government and entitle the [Plaintiff] to institute an action.' " *Kosmo v. United States,* 72 Fed.Cl. 46, 53 (2006) (quoting *Brighton Vill. Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995) (citations omitted)). In military pay cases, generally, a claim accrues on "the date on which the service member was denied the pay to which he claims entitlement." *Martinez v. United States,* 333 F.3d 1295, 1314 (Fed.Cir.2003) (en banc), *cert. denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004). Thus, Mr. Chisolm's claim to back pay lost due to the Army's failure to promote him to the rank of sergeant first class would have accrued when the NCOER allegedly prevented this promotion from taking place. *See Sanders v. United States,* 32 Fed.Cl. 573, 575 (1995).

■ Plaintiff is far from precise in detailing when and how this occurred. In one place he seems to contend that he would have been promoted when first eligible, in April 1990. Pl.'s Opp'n at 1. When given the opportunity to clarify his allegations during the hearing on the government's motion to dismiss, Mr. Chisolm vaguely asserted that the promotion would have occurred between 1989 and 1995, and ultimately settled on the year 1993. Tr. at 7–8, 10. But in any event, precision on this point is not necessary, both because the merits of the claims are not before the court at this time and because the Servicemembers Civil Relief Act, 50 U.S.C. app. §§ 501–527, tolled the statute of limitations for Mr. Chisolm's claims until his discharge. *See* 50 U.S.C. app. § 526(a) (Supp. V 2005); *Lowe,* 79 Fed.Cl. at 224–25. Thus, no matter when the NCOER allegedly blocked his promotion during his time of active service, Mr. Chisolm's time in which to file a lawsuit for back pay did not start running until March 31, 1996, which was indisputably the date he was honorably discharged. *See* Att. 1 to Def.'s Mot. to Dismiss; Tr. at 4, 11, 16, 30.[15]

■ The problem for Mr. Chisolm is that he did not file his lawsuit within six years of April 1, 1996. His complaint was filed in this court on July 6, 2007, more than five years too late.[16] Plaintiff alleges that his cause of action did not accrue until January 18, 2006, when the ABCMR's director informed him (for at least the third time) that the board would not consider the matter further. *See* Compl. ¶ 4; Tab F to Pl.'s Opp'n at 2–3. He argues that this final action by the board was a prerequisite to the filing of his lawsuit. Pl.'s Opp'n at 8–9. But Mr. Chisolm misunderstands the nature of military back pay actions in our court. Activity before a military correction board is optional, not mandatory, and is not required to ripen a claim nor works to postpone the running of the limitations period. *Martinez,* 333 F.3d at 1306–10. Plaintiff's claims accrued when the Army decided not to promote him, not when the ABCMR decided to leave his record uncorrected. *See id.* at 1310–15. Whatever the rule of accrual might be in APA challenges to board decisions, such challenges are in any event not within our jurisdiction. *Id.* at 1313 (citing *Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993)).

---

**15.** Once plaintiff was discharged, of course, he would no longer be the subject of any promotion decisions. Thus, even were his pension lower than he contends it should have been due to his not being promoted to sergeant first class, each benefit check is not the result of a new decision to deny him promotion, but reflects the last decision not to promote. Accordingly, the "continuing claim doctrine" does not apply. *See Wells v. United States,* 420 F.3d 1343, 1345–46 (Fed.Cir.

2005) (explaining that a new claim does not arise with each underpayment when the underpayments result from "a single alleged wrong" which "caused later adverse effects").

**16.** Mister Chisolm's earlier, district court complaint—filed on February 21, 2006, *See* Ex. A to Def.'s Reply at 1—was also brought well after the statute of limitations expired.

Similarly, Mr. Chisolm's argument concerning the ability of the ABCMR to relax the requirements of its own statute of limitations "if it finds it to be in the interest of justice," 10 U.S.C. § 1552(b), is beside the point. *See* Pl.'s Opp'n at 8. The ability of the Correction Board to provide relief even when an application is filed more than three years after the discovery of an alleged error does not affect the running of the statute of limitations for filing matters in our court.[17] While section 2501 contains certain exceptions, "the interest of justice" is not one of them. Moreover, even were equitable tolling available under section 2501—a very doubtful proposition in light of *John R. Sand*, 128 S.Ct. at 753–54—plaintiff has not alleged any facts that would entitle him to such tolling.[18]

The statute providing for military record correction boards, 10 U.S.C. § 1552, "is not the source of the right to back pay," *Martinez*, 333 F.3d at 1315, and thus any violations of the statute or its implementing regulations do not provide Mr. Chisolm with a newly-accrued cause of action. And insofar as Mr. Chisolm alleges violations of the Military Whistleblower Protection Act, 10 U.S.C. § 1034, our court has repeatedly held that we lack jurisdiction over such claims because the statute is not money-mandating. *See Gant v. United States*, 63 Fed.Cl. 311, 316 (2004); *Mercer v. United States*, 52 Fed.Cl. 718, 721 (2002); *Soeken v. United States*, 47 Fed.Cl. 430, 433 (2000); *Hernandez v. United States*, 38 Fed.Cl. 532, 535–37 (1997). Mister Chisolm's back pay claims ultimately rest on the Army's decision not to promote him, and not on the way the ABCMR treated his applications. These claims accrued while he was on active duty, and the six year statute of limitations began to run on April 1, 1996, after he was honorably discharged. His case was brought to our court five years too late, and as a consequence must be dismissed for lack of subject matter jurisdiction. The government's motion to dismiss is, therefore, GRANTED.

### III. CONCLUSION

For the reasons stated above, the Court finds that plaintiff's complaint was filed after the statute of limitations period had expired. Defendant's motion to dismiss the case for lack of subject matter jurisdiction is **GRANTED.** The Clerk is directed to close the case. No costs shall be awarded.

**IT IS SO ORDERED.**

---

17. One exception to this principle would arise when a board of correction excuses an untimely-filed application and orders a correction which, in turn, triggers mandatory payments under some other statute. If the resulting payments are not made, then a new cause of action would accrue at that time. *See Martinez*, 333 F.3d at 1314–15 (citing *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed.Cir.1991) and *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979)).

18. Recognized circumstances that warrant tolling include when a plaintiff has "fil[ed] a defective pleading during the statutory period" or "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).